UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
№ 11-CV-2471 (JFB)(AKT)
_____

NICHOLAS SMALL,

Plaintiff,

VERSUS

BUD-K WORLDWIDE, INC., KATHLEEN M. RICE AND LAUREN J. KALAUDJIAN,

Defendants.

_____

**MEMORANDUM AND ORDER**
September 28, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Nicholas Small ("Small" or "plaintiff") brought this action against Bud-K Worldwide, Inc. ("Bud-K"), Kathleen M. Rice ("Rice") and Lauren J. Kalaudjian ("Kalaudjian") (collectively the "defendants").[1] Plaintiff seeks a declaration from Rice and Kalaudjian (the "County defendants") that the "Black Cat Keychain," described *infra*, was and is legal to possess in New York and may not be considered "metal knuckles" for purposes of prosecution under New York Penal Law § 265.01(1) ("Section 265.01(1)").[2] Plaintiff brings this action against Bud-K alleging that Bud-K violated New York General Business Law § 349 ("GBL 349") and New York General Business Law § 350 ("GBL 350") by advertising and selling plaintiff the Black Cat Keychain. Plaintiff also claims that Bud-K violated the terms of an

---

[1] This action was also commenced against Clint H. Kadel. By stipulation, the action was dismissed as against Clint H. Kadel. (Stipulation of Dismissal, June 27, 2011, ECF No. 6.)

[2] Section 265.01(1) provides, in relevant part, that:

> A person is guilty of criminal possession of a weapon in the fourth degree when:
>
> (1) He or she possesses any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or "Kung Fu star" . . .

N.Y. Penal Law § 265.01(1).

1

Assurance of Discontinuance dated October 29, 2002.

Plaintiff has moved for partial summary judgment against the County defendants alleging that Section 265.01(1) is void for vagueness. Defendant Bud-K has also moved for summary judgment on the same grounds. The County defendants cross-moved for summary judgment alleging that: (1) plaintiff has failed to state a claim upon which relief can be granted; (2) the County defendants are entitled to qualified immunity; (3) Section 265.01(1) is not unconstitutionally vague; (4) there is no Second Amendment Right to possess and carry a Black Cat Keychain;[3] and (5) because plaintiff's conviction has not been invalidated, he cannot bring this action.[4] For the reasons set forth below, the Court finds that Section 265.01(1) is not unconstitutionally vague. Thus, the Court denies summary judgment on the claims by plaintiff and Bud-K against the County defendants and grants the County's cross-motion for summary judgment. However, plaintiff's claims against Bud-K, which are not part of the current motions, remain.

---

[3] At the oral argument that took place on June 14, 2012, plaintiff's counsel clarified that plaintiff is not arguing that there is a Second Amendment right to carry a Black Cat Keychain and, instead, argued that the Second Amendment Right gives rise to an additional constitutional dimension that must be considered in resolving the vagueness issue. Accordingly, the Court need not determine whether or not there is a Second Amendment right to carry a Black Cat Keychain.

[4] The County defendants also argue that Bud-K does not have standing to argue that Section 265.01 is vague. The Court disagrees. Bud-K has a direct pecuniary interest in that it has to refrain from selling the Black Cat Keychain in order to avoid adverse action. Accordingly, Bud-K has standing.

I. BACKGROUND

A. Facts

The Court has taken the facts set forth below from the parties' affidavits and exhibits, and from the defendants' Rule 56.1 Statement of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[5]

On or about June 13, 2010, plaintiff purchased a "Black Cat Keychain" from Bud-K through Bud-K's website. (Pl.'s 56.1. ¶ 1; Am. Compl. ¶ 24.) The Black Cat Keychain is advertised as an "unusual keychain" that "packs a mighty punch" such that "[t]he eyes of the cat become finger holes and the ears become spikes when clutched in the hand to create an excellent means of self-defense against an attacker." (*Id*. ¶ 2.) With the consent of all parties, Bud-K provided the Court with a Black Cat Keychain.[6] The Black Cat Keychain is approximately 3 inches long when measured from the base of the keychain to the tip of the "ears." The ears are approximately 1 ½ inches long and are triangular in shape, and thus are wider towards the base of the keychain and become narrower at the end. It is approximately two inches wide and has two holes that are large enough to fit 2

---

[5] In addition, although the defendants' Rule 56.1 Statements contain specific citations to the record to support its statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record, when utilizing the 56.1 Statements for purposes of this summary of facts.

[6] Photographs of the Black Cat Keychain also are contained in the record.

fingers through. The Black Cat Keychain appears to be made of a metal material and is approximately one-quarter inch thick.

On or about September 16, 2010, plaintiff was arrested and charged with violation of Section 256.01 based on his possession of a Black Cat Keychain in a pouch on his belt that was discovered by police during a vehicle stop. (*Id.* ¶ 3.) Plaintiff pled guilty to a violation of New York Penal Law § 240.20(7) and allocuted to being in possession of an instrument that could be considered metal knuckles. (County Defs.' Counter 56.1 ¶¶ 3, 4.)

### B. Procedural History

Plaintiff commenced this action on May 23, 2011. Plaintiff amended his complaint on August 15, 2011.

On December 22, 2011, Small, Bud-K and the County defendants separately requested pre-motion conferences in anticipation of their motions for summary judgment. The Court held a telephone pre-motion conference on January 10, 2012 and set a briefing schedule. Plaintiff and Bud-K filed their motions on February 24, 2012. The County defendants filed their oppositions on April 6, 2012. The County defendants filed their cross-motion on April 11, 2012. Bud-K filed its reply and opposition to the cross-motion on April 27, 2012. Plaintiff filed his reply and opposition to the cross-motion on May 2, 2012. The County defendants filed their reply to the cross-motion on May 11, 2012. Oral argument was heard on June 14, 2012. By letter dated June 28, 2012, counsel for Bud-K provided the Court with supplemental authority. By letter dated July 6, 2012, plaintiff's counsel provided the Court with supplemental authority. The Court has fully considered the arguments and submissions of the parties.

### II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

Plaintiff and Bud-K allege that Section 265.01(1) is void for vagueness as applied to the Black Cat Keychain. The County defendants argue that Section 265.01(1) is not vague, and thus, the claims against the County defendants should be dismissed. In addition, the County defendants argue that plaintiff cannot bring this action because his conviction has not been invalidated. For the reasons set forth below, this Court finds that plaintiff is not barred by the *Heck* doctrine from bringing this action. However, the Court finds that Section 265.01(1) is not vague, and thus, summary judgment is granted as to the County defendants and denied as to the plaintiff and Bud-K.

### A. The *Heck* Doctrine

The County defendants argue that plaintiff is barred from bringing this action because of the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364 (1994)).

In *Heck v. Humphrey*, the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (citing *Heck*, 512 U.S. at 480-90). The Supreme Court in *Heck* explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's

issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (footnote omitted) (emphasis in original); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81, 125 S. Ct. 1242, 161 L.Ed.2d 253 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)). Thus, pursuant to *Heck*, courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g.*, *Guerrero v. Gates*, 442 F.3d 697, 703-04 (9th Cir. 2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker*, 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 U.S. Dist. LEXIS 33290, 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction. . . . Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotation marks and citations omitted)); *Younger v. City of N.Y.*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*); *cf. Jovanovic v. City of N.Y.*, No. 04 Civ. 8437 (PAC), 2006 U.S. Dist. LEXIS 59165, 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006), *mot. for reconsideration granted in part* 2008 WL 355515 (S.D.N.Y. Feb. 07, 2008) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

The *Heck* doctrine is inapplicable to the situation at bar. Here, plaintiff is not seeking to invalidate his conviction. In fact, as explained *supra*, plaintiff was not convicted pursuant to Section 265.01(1), but rather pled guilty to a violation of New York Penal Law § 240.20(7) and allocuted to being in possession of an instrument that could be considered metal knuckles. (County Defs.' Counter 56.1 ¶¶ 3, 4.) Moreover, the plaintiff is not requesting that this Court overturn his conviction in state court, nor would the prospective declaration sought in this case invalidate his conviction. In fact, plaintiff's counsel confirmed, on the record at oral argument, that plaintiff is not seeking to disturb his guilty plea. Instead, plaintiff is seeking "[a] declaration that the 'Black Cat Keychain' was and is legal to possess in New York and may not be considered to be 'metal knuckles' for purposes of prosecution under New York Penal Law § 265.01." (Am. Compl. ¶ 59.) Thus, the *Heck* doctrine is inapplicable to the situation at bar.

B.  Vagueness

1.  Legal Standard

Under the vagueness doctrine, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267, 117 S. Ct. 1219, 137 L.Ed.2d 432 (1997); *accord United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999), *cert denied* 531 U.S. 823 (2000); *see Rogers v. Tennessee*, 532 U.S. 451, 459, 121 S. Ct. 1693, 149 L.Ed.2d 697 (2001) (holding that right to fair warning "bear[s] on the constitutionality of attaching criminal penalties to what previously had been innocent conduct"); *Marks v. United States*, 430 U.S. 188, 191, 97 S. Ct. 990, 51 L.Ed.2d 260 (1977) ("[P]ersons have a right to fair warning of that conduct which will give rise to criminal penalties."). Due process requires that a criminal statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L.Ed.2d 903 (1983); *see United States v. Whittaker*, 999 F.2d 38, 42 (2d Cir. 1993). Where a statute does not regulate First Amendment interests, the "statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L.Ed.2d 372 (1988); *accord Whittaker*, 999 F.2d at 42. Courts use a two-part test to determine whether a statute is unconstitutionally vague as applied: "a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993) (internal quotations, citations, and alteration omitted), *cert denied* 510 U.S. 933 (1993); *see also Perez v. Hoblock*, 368 F.3d 166, 174 (2d Cir. 2004) ("The Due Process Clause requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them" (internal quotation marks omitted)). "The relevant inquiry is 'whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 187 (2d Cir. 2010) (citing *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008)).

"Because the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *Nadi*, 996 F.2d at 550. However, "[a] statute or regulation is not required to specify every prohibited act." *Perez*, 368 F.3d at 175 (holding that statute that provided that "any action detrimental to the best interest of racing" was not vague as applied to plaintiff's conduct.).

"The degree of vagueness tolerated in a statute varies with its type: economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all." *VIP of Berlin, LLC*, 593 F.3d at 186 (quoting *Rubin*, 544 F.3d at 467).[7]

---

[7] Plaintiff argues that "[t]he recently recognized right to protect oneself with an 'arm' gives rise to an additional constitutional dimension that must be considered in resolving the vagueness issue." (Pl.'s Br. at 10-14.) Bud-K appears to make a similar argument. (Bud-K. Br at 9 ("A vague law is *especially* problematic where 'the uncertainty induced by the statute threatens to inhibit the exercise

2. Application

Although not binding on this Court on the federal constitutional question raised by this litigation, the parties point to several New York State Court cases that have analyzed Section 265.01(1) that are instructive on the vagueness issue before the Court.[8]

In *People v. Laguna*, the defendants were in possession of items referred to as "spikes" that were described as:

> [a] belt wrist strap with another piece of leather attached to it; the second piece of leather is in a triangular shape with a loop which slips over the middle finder. Metal studs, approximately one-half-inch long, protrude from the entire item.

124 Misc. 2d 182, 183, 475 N.Y.S.2d 783 (N.Y. Crim. Ct. 1984). The Criminal Court of the City of New York failed to reach the constitutionality of Section 265.01, but held that "'spikes' are not 'metal knuckles' within the meaning of the statute." *Id*. In coming to this decision, the court noted that there was no definition of "metal knuckles" in the statute or in the legislative history and resorted to "[t]he common dictionary

---

of constitutionally protected rights" (emphasis in original) (citing *Colautti v. Franklin* 439 U.S. 379 (1979).) The County defendants argue that there is no constitutional right to carry a "Black Cat Keychain." (County Defs.' Opp. Br. to Bud-K at 8-9.) As noted *supra*, plaintiff clarified at oral argument that he is not arguing that there is a Second Amendment right to possess a Black Cat Keychain, but it must be considered in the vagueness analysis. Accordingly, the Court interprets plaintiff's argument to mean that he is suggesting that the degree of vagueness tolerated in the statute must be the "strictest of all" because Section 256.01 may infringe on a constitutional right. *See VIP of Berlin, LLC*, 593 F.3d at 186 (quoting *Rubin*, 544 F.3d at 467). However, the Court need not determine whether or not there is a Second Amendment right to possess a Black Cat Keychain because, even if this Court applies the strictest scrutiny to plaintiff and Bud-K's vagueness challenge, the Court would still find that the statute is not void for vagueness for the reasons set forth herein.

[8] The County defendants argue that "[a]dditionally, '[t]he construction by State courts of a State statute is binding on Federal courts, there being no Federal question involved, even though such courts disagree with the soundness of the interpretation . . .'" (County Defs.' Br. in Support of Cross Motion at 8 (citing *Harnett v. New York City Transit Auth.*, 200 A.D.2d 27, 32, 612 N.Y.S.2d 613 (1994) *aff'd*, 86 N.Y.2d 438, 657 N.E.2d 773 (1995) and *Greater New York Metropolitan Food Council v. McGuire*, 6 F.3d 75 (2d Cir. 1993)).) It is correct that a state court's construction of its own state's constitution is binding on a federal court. *See Stolberg v. Members of Bd. of Trustees for State Colleges of State of Conn.*, 541 F.2d 890, 894 (2d Cir. 1976) ("It is basic that a state court's construction of its own constitution is definitive and binding upon the federal court."), *cert denied* 429 U.S. 897 (1976). Similarly, "[s]o long as no constitutional issue is affected, the state court's construction of its own statute is binding on the federal courts." *Weiss v. Walsh*, 324 F. Supp. 75, 78 (S.D.N.Y. 1971). However, a federal constitutional challenge is being raised in this case, and no state court decision is binding on a federal constitutional question. *See, e.g.*, *William Jefferson & Co. v. Bd. of Assessment and Appeals No. 3 for Orange Cnty.*, 2012 WL 3711714, at *3 (9th Cir. 2012) ("The California court's resolution of a federal constitutional question is persuasive but is not binding on us."); *Systems Contractors Corp. v. Orleans Parish Sch. Bd.*, 148 F.3d 571, 475 n.23 (5th Cir. 1998) ("Although state courts have the authority to decide issues of federal constitutional law, state court decisions are not binding upon the federal courts."); *Warburton v. Underwood*, 2 F. Supp. 2d 306, 318 (W.D.N.Y. 1998) (same). Thus, although the Court looks to the state court for construction of the statute (and, here, the lower state courts disagree on that issue), this Court must make its own assessment on the question of the constitutionality of the statute under the U.S. Constitution. However, as discussed *infra*, although not binding, this Court finds the well-reasoned analysis in *People v. Laurore*, 10-252, 2011 WL 903184 (N.Y. Sup. Ct. Feb. 15, 2011) on the vagueness issue to be extremely persuasive both as to the construction of the statute under New York law, and the federal vagueness question before this Court.

definitions of metal knuckles. These definitions refer to 'metal finger rings' or a 'metal device.'" *Id*. at 184. Accordingly, the court concluded that "[L]eather straps with spikes protruding from them are not in these definitions." *Id*. at 184.

Less than a year later, the Criminal Court of the City of New York ruled in *People v. Singleton* that an item similar to the item in *Laguna* could be found by the trier of fact to be metal knuckles. 127 Misc. 2d 735, 487 N.Y.2d 268 (N.Y. Crim. Ct. 1985). As a threshold matter, the court noted that "the possession of metal knuckles has long been prohibited in this jurisdiction as well as in others." *Id*. at 736, 487 N.Y.2d 269. In *Singleton*, the item at issue was described as follows:

> It is composed of two connecting parts. The larger part is a leather strap designed to be worn on the wrist and hand. The strap is approximately two inches wide at the wrist and widens to cover the back of the hand from the wrist to just above the knuckles. Several metal spokes, each approximately one-half inch long, are fastened to this strap. The second part of the item is a strap which covers the knuckles and fist. This second strap, to which metal spikes are also fastened, is connected to the first strap. The second strap, with the spikes, fasted to it, is kept in place over the knuckles and fist by means of an attached leather loop through which the wearer inserts his fingers.

*Id*. at 735-36, 487 N.Y.2d at 269. The court disagreed with the reasoning of *Laguna*, and noted that the definition in *Webster's Dictionary* was: "a set of metal finger rings or guards attached to a transverse piece and worn over the front of the doubled fist for use as a weapon." *Id*. at 736, 487 N.Y.2d at 269. The court then noted that "common sense is not exhausted by dictionary definitions" and noted three factors to be considered when determining whether an item is metal knuckles:

> Firstly, a blow by a fist wearing the instrument must cause metal to come into contact with the victim's body. . . . Secondly, the instrument must be designed so that it readily can be used offensively against the human body. Thirdly, the design of the instrument must be such that it cannot reasonably be put to any use other than to enable the wearer to inflict a blow with a fist covered by metal or pieces of metal. The second and third factors, which overlap to a certain extent, will ensure that jewelry and other items which are "innocently possessed [will not] provide the basis for police action."

*Id*. at 269-70, 487 N.Y.2d at 736-37. The court considered the three factors and held that the item in question could be considered metal knuckles:

> Having considered the foregoing factors, I conclude that the item allegedly possessed by the defendant sufficiently qualifies as metal knuckles so as to warrant the denial of his motion to dismiss. Were a blow to be struck by a person wearing this item, the metal spikes covering his fist would surely come in contact with the victim's body. It is apparent that this item readily can be used as a weapon. In other words, no material alterations need be made to it before it could be used in striking. Moreover, from the very

8

design of the item – the fact, for example, that the pointed metal spikes are carefully positioned so as to be held in place over the fist and knuckles – one can legitimately conclude that its only reasonable use is to enhance the wearer's ability to injure a victim.

*Id*. at 270, 487 N.Y.2d at 737. The court did not address any constitutional vagueness issues with respect to the statute.

Recently, in the case *People v. Laurore*, the New York Supreme Court of Rockland County, after analyzing *Laguna* and *Singleton*, determined that a "cat key chain" that "[h]as two holes for the fingers to slide into and two metal pointed spikes that, when the knuckles are worn, protrude from the back of the hand where the fist could strike an individual," was metal knuckles within the definition of the New York statute. 10-252, 2011 WL 903184, at *2, *4 (N.Y. Sup. Ct. Feb. 15, 2011). The court found that whether the dictionary definition from *Laguna,* or the three factors in *Singleton* were analyzed, the cat keychain was metal knuckles. *Id.* at *4. The court stated that "the object has two holes for fingers and two pointed metal spokes which, when worn protrude from the back of the hand and which are obviously designed to enable one to inflict a blow from a fist enclosed by metal spikes for the purpose of enhancing the injury to be inflicted on contact." *Id*. at *3.

Moreover, the court found that the statute was not unconstitutionally void for vagueness, facially or as applied. *Id*. at *7. The court framed the vagueness issue regarding Section 256.01(1) in the following terms:

Many of the items, such as "stun gun," "gravity knife" "switchblade knife," "pilum ballistic knife" and "metal knuckle knife," to name a few, are defined within the statute. However, the following fourteen items enumerated in the statute are not defined in the Penal Law: pistol, revolver, dagger, dirk, razor, stiletto, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, sand bag, sandclub and slungshot. The question is, does the fact that the statute does not specifically define "metal knuckles" render the statute unconstitutionally vague in that respect.

*Id*. at *5. The court then rejected the argument that a lack of a definition made the term "metal knuckles" unconstitutionally vague:

The mere fact that "metal knuckles" is not a term defined by the Penal Law does not render the statute unconstitutionally vague. The law does not require that every single term used in the Penal Law be defined. The mere fact that the legislature undertook to define some objects and not others is an indication that the legislature was well aware of the self-defining nature of "metal knuckles". The spirit and purpose of the statute and the objects to be accomplished must be considered when interpreting a st[a]tute.

*Id*. at *6. Thus, based upon an analysis of New York case authority on vagueness (which mirrors federal law), as well as reliance on federal case authority, the court found that "the statute is reasonably clear in its application to the defendant and therefore

9

reject[ed] the as-applied challenge." *Id.* at *7.

Plaintiff, in addition to noting that *Laurore* is not binding on this Court or even an "intermediate appellate decision with authority throughout one of the Judicial Departments, let alone the entire State," argues that, since the Court in *Laurore* essentially chose between two inconsistent cases, the decision in *Laurore* demonstrates how reasonable minds can differ as to how to interpret "metal knuckles." (Pl.'s Reply Br. at 8.) Moreover, plaintiff argues that the common understanding of metal knuckles would not include the Black Cat Keychain with defensive attributes. However, the Court disagrees with plaintiff, and holds that the statute is not void for vagueness as applied to the Black Cat Keychain. Although it is not binding, this Court finds not only the analysis in *Laurore* of the construction of the statute under New York law as it relates the term "metal knuckles" to be highly persuasive, but also fully agrees with the analysis of the vagueness issue in *Laurore* and concludes that it applies with equal persuasive force to the federal question in the instant case.

First, simply because two courts disagree over the application of a statute does not necessarily mean that a statute is void for vagueness. *United States v. Morrison*, 686 F.3d 94, 104 (2d Cir. 2012) ("it is manifest that conflicts between courts over the interpretation of a criminal statute do not in and of themselves render that statute unconstitutionally vague"); *see also United States v. Kernell*, 667 F.3d 746, 754 (6th Cir. 2012) ("the fact that different courts have interpreted a statute differently does not make the statute vague – if that were true, a circuit split over the interpretation of a criminal statute would by definition render the statute unconstitutional"), *petition for cert filed*; *United States v. Michel*, 446 F.3d 1122, 1136 (10th Cir. 2006) ("That different courts might draw subtle distinctions as to what constitutes crimes occurring on occasions different from one another does not necessarily render the statute vague for constitutional purposes."); *United States v. Woods*, 730 F. Supp. 2d 1354, 1364 (S.D. Ga. 2010) ("the Court notes that Defendant cites no case law for his proposition that different interpretations of the same statute make the statute unconstitutionally vague, and notably, 'uncertainty in [a] statute is not enough for it to be unconstitutionally vague'" (citation omitted)); *Nautilus Ins. Co. v. Int'l House of Pancakes*, 622 F. Supp. 2d 470, 482 (S.D. Tex. 2009) ("The fact that some courts disagreed about the application of [the statute] . . . does not mean that applying the statute to such claims makes it so vague as to violate due process").

In any event, in this case, plaintiff and Bud-K have raised a vagueness claim as it applies to the Black Cat Key Chain, yet the two conflicting decisions plaintiff and Bud-K rely on deal with a completely different item. In *Laguna* and *Singleton*, the items in question were leather straps with metal prongs protruding. Here, the item is completely different as it is constructed entirely out of metal and has metal finger holes. Plaintiff and Bud-K have only challenged the statute as applied to the Black Cat Keychain, and thus, the fact that the New York Courts cannot agree on how to apply the statute to a different item, that is made of both leather and metal, does not demonstrate that reasonable minds can differ as to how the statute relates to the Black Cat Keychain.[9]

---

[9] Moreover, on the issue of the construction of the statute under state law, plaintiff is incorrect that the *Laurore* court simply picked the *Singleton* analysis. As discussed *supra*, the court in *Laurore* determined that whether using the common sense or dictionary definition found in *Laguna* or the three-step analysis

10

As discussed below, this Court agrees with the persuasive analysis of the Rockland County Supreme Court, and finds that Section 265.01(1) is not unconstitutionally void for vagueness as applied to the Black Cat Keychain in this case.

As noted *supra*, "[a] statute or regulation is not required to specify every prohibited act." *Perez*, 368 F.3d at 175. Thus, the fact that "metal knuckles" is not defined in Section 265.01(1) is not dispositive of this issue. Plaintiff argues that,

> Here, the "common understanding" of "metal knuckles" undoubtedly derives from the better-known (but statutorily inadequate for obvious metallurgical reasons) phrase, "brass knuckles." The common perception of the meaning of that term long has been, and remains, that of a hand-worn instrument that, by virtue of its mass, augments the punching power of its wearer, much as weights in a bat increase the momentum (essentially striking power) that the bat can impart to a ball.

(Pl.'s Br. at 4-5.) However, plaintiff does not point to any source to support this "common sense" understanding. He does not provide the Court with a definition of "metal knuckles" from any reputable book or website that would leave the Court to believe that the plaintiff's "common understanding" is correct. Additionally, at oral argument, plaintiff argued that there are several definitions of metal or brass knuckles that support plaintiff's analysis yet failed to directly cite any specific source.

---

found in *Singleton*, a cat keychain, which based on the description is similar if not identical in all material respects to the Black Cat Keychain, was metal knuckles. This Court agrees with that construction of state law under either framework.

In addition, the Court notes that plaintiff's argument for a narrow "common sense" understanding of "metal knuckles" to be limited to "brass knuckles" is undermined by reading the term in the context of the entire statute. It is well settled that, in assessing vagueness challenges, the court should not look at statutory language in isolation, but rather should consider the language in its statutory context. *See Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 213 (2d Cir. 2012) (citing *United States v. Farhane*, 634 F.3d 127, 142 (2d Cir. 2011); *see also United States v. Maurer*, 639 F.3d 72, 78 (3d Cir. 2011) (emphasizing, in rejecting vagueness challenge, that the term "violence" should not be construed in isolation, but rather in the context of the terms "sadistic or masochistic conduct"). Here, when the term "metal knuckles" is considered in its statutory context, it is abundantly clear to the ordinary person that a narrow understanding of "metal knuckles" to apply only to brass knuckles that cover four fingers for additional punching weight is illogical because the statute also prohibits, in the long list of items (many of which are undefined), other things that go over one or more knuckles including "plastic knuckles" and a "metal knuckle knife." Thus, an ordinary person would understand, in the context of the entire statute, that the term "metal knuckles" is criminalizing a broad category of metal weapons that can be placed over multiple knuckles and the item at issue in this case certainly falls into that definition.

In any event, even if this Court was to adopt plaintiff's "common sense" understanding and equate the term "metal knuckles" in the statute to "brass knuckles," the Court would still find that the statute is not constitutionally void for vagueness. As the court in *Laurore* noted "[b]oth Webster's

11

dictionary online and onlinedictionary.com define 'brass knuckles' as follows: Brass knuckles: a small metal weapon; worn over the knuckles on the back of the hand." 2011 WL 903184, at *1. Here, the Black Cat Keychain meets that definition. As described *supra*, the Black Cat Keychain is a small metal object, approximately 3 inches by 1 ½ inches, that is designed to be worn over the back of the hand by placing two fingers through the finger holes.[10] Although, as discussed *supra*, plaintiff argues, without any support, that the common sense understanding equates "brass knuckles" with an object that is large in mass in order to augment a punch, a punch would certainly be augmented by the use of the Black Cat Keychain as it is clearly designed to increase the injuries inflicted when it is used. Thus, even substituting the term brass knuckles for metal knuckles, the statute is still not vague as applied to the Black Cat Keychain.

Moreover, plaintiff alleges in his complaint that he bought the Black Cat Keychain on Bud-K's website, which explicitly describes the item's design as a weapon. Annexed as Exhibit B to the Declaration of Liora M. Ben-Sorek (the "Ben-Sorek Decl.") is a printout from Bud-K's website with pictures and a description of the item. (Ben-Sorek Decl., Ex. B, Apr. 6, 2012, ECF No. 45.) The website states: "This unusual keychain packs a mighty punch! The eyes of the cat become finger holes and the ears become spikes when clutched in the hand to create an excellent means of self-defense against an attacker." (*Id.*) Thus, it is clear from the website, just as it is from the item itself, that the item is designed for a person to increase the damage done if the purchaser punches another person with the Black Cat Keychain. In addition, there is a photograph of the Black Cat Keychain worn over a closed fist demonstrating how the item would be used as a weapon in a similar fashion to brass or metal knuckles. In short, a person of ordinary intelligence reviewing the website would understand that the Black Cat Keychain is a weapon designed to be worn over a closed fist like metal or brass knuckles.

Thus, the Court holds that a person of ordinary intelligence reading Section 265.01(1) would understand the term "metal knuckles," given the common meaning of the term (especially in the context of the statute) to apply to an item such as the Black Cat Keychain that is clearly designed as a weapon to be put over multiple knuckles, with metal spikes protruding from the knuckles. The fact that the weapon also functions as a key chain, or that it could be viewed as a defensive weapon (as opposed to an offensive weapon) has no constitutional significance in the vagueness analysis given the statutory wording. In other words, no ordinary person could read the statute as exempting weapons that would otherwise qualify simply because they have a dual purpose or could be used defensively. There is simply no language in the statute that even remotely suggests that those types of distinctions would exempt the weapon from the statute. Accordingly, Section 265.01 gives a person of ordinary intelligence a reasonable opportunity to know that the Black Cat Keychain is prohibited, and Section 265.01 is not void

---

[10] The Black Cat Keychain also meets the Webster's Dictionary definition cited in *Singleton* and relied upon in *Laguna*: "a set of metal finger rings or guards attached to a transverse piece and worn over the front of the doubled fist for use as a weapon." *Singleton*, 127 Misc. at 736 (citing *Laguna*, 124 Misc. 2d 182.) The Black Cat Keychain has metal finger rings, or holes, and is designed to be worn over a closed fist for use as a weapon. Thus, both dictionary definitions are met.

for vagueness as applied to the Black Cat Keychain.[11]

Other courts confronting analogous constitutional vagueness challenges in connection with various terms in weapons statutes have reached a similar conclusion. For example, in *State v. Neighbors*, 908 P.2d 649 (Kan. Ct. App. 1995), a defendant challenged his conviction for the sale of throwing stars and two metal knuckles (one in the form a handle of a knife and one which was identified as a "brass buckle." *Id*. at 652. Defendant argued that, because metal knuckles had no definition, it was unconstitutionally vague. With respect to the lack of a definition of metal knuckles in the statute and in the jury instructions, the court noted that "[t]he term 'metal knuckles is not a term which is so foreign to the vocabulary of the average juror as to require definition." *Id*. at 655 (quotations and citation omitted). Moreover, in rejecting the vagueness challenge, the Court held that "[a] person of common intelligence need not guess whether the statute forbids the sale of metal knuckles, regardless of whether they are characterized as paperweights, belt buckles, historic replicas, or wall hangings." *Id*. at 653. In addition, the court found unpersuasive the argument that the statute is vague because it fails to draw a clear line between legitimate and illegitimate uses for metal knuckles. *Id*. ("[The statute] makes unlawful the sale of *all* metal knuckles, regardless of their intended use." (emphasis in original)). Finally, the court rejected a selective enforcement challenge, noting that the fact that someone is the first to be prosecuted under the law does not, by itself, establish that there is selective enforcement of the law because of vagueness. *Id*.; *see also Dorsey v. State*, 442 S.E.2d 922, 923 (Ga. Ct. App. 1994) (rejecting vagueness challenge to prosecution of defendant for possession of a scalpel as a "dangerous or deadly weapon or instrument" and noting that "[a] scalpel in a physician's bag may be just a scalpel; a 'scalpel' in a pocket may be a concealed dangerous weapon"); *State v. Horton*, 236 A.2d 891, 893 (Super. Ct. N.J. 1967) (rejecting vagueness challenge to term "dangerous knife" and noting, when read in the context of the statute, "it is readily seen that what the Legislature contemplated was a knife dangerous to life or human safety; one by the use of which a fatal wound may probably or possibly be given"), *cert denied* 51 N.J. 393 (N.J. Mar. 26, 1968); *People v. Grubb*, 408 P.2d 100, 106 (Cal. 1966) (rejecting vagueness challenge to undefined term "billy" and noting that "the possession of the altered baseball bat, taped at the smaller end, heavier at the unbroken end, carried about in the car, obviously usable as a 'billy' clearly not transported for the purpose of playing baseball, violates the statute"), *superseded by statute as stated in People v. Rubalcava*, 1 P.3d 52, 57 (Cal. 2000).

The Court notes that the fact that there may be other difficult hypothetical situations involving the application of the term "metal knuckles" – such as certain types of jewelry that cover the fingers – does not mean that the statute as applied to this particular item is unconstitutionally vague. *See, e.g.*, *United States v. Austin*, 902 F.2d 743, 745 (9th Cir. 1990) ("Although [the defendant] contends that 'weapons' and 'tools' are ambiguous terms, we are not here concerned

---

[11] To the extent that plaintiff and Bud-K also argue that the wording of the statute encourages arbitrary and discriminatory enforcement, the Court concludes that any such vagueness argument on that ground also fails because there is simply insufficient evidence of arbitrary or discriminatory enforcement based upon the purported vagueness of the terms. As discussed *supra*, the fact that New York courts have reached different results in two cases involving items different from the instant case is simply insufficient to satisfy this requirement.

with the vagueness of the law as applied to the conduct of others." (citation omitted)), *cert denied* 498 U.S. 874 (1990); *see also Upshur v. State*, 420 A.2d 165, 168 (Del. 1980) ("we find that [the statutes] are not unconstitutionally vague as applied in this case [involving a butcher knife] and we will not be swayed by defendant's pleas on behalf of those whom he fears might be arrested if found to be carrying a toy or table knives in their pockets"), *superseded by statute on other grounds as stated in Taylor v. State*, 679 A.2d 449 (Del. 1996).

Finally, plaintiff contends that the New York State Legislature could not have reasonably intended to criminalize weapons, such as the Black Cat Keychain, which can be utilized defensively by potential rape or robbery victims, to prevent a violent attack. (*See* Pl.'s Br. at 7-8 ("Given these defensive attributes of the B[CK] as compared to the primarily offensive attributes of brass or 'metal' knuckles, it cannot even reasonably be said that the legislature could have intended to include the BCK among § 265.01(1)'s list of *per se* prohibited items."); *see also id.* at 6 ("[T]he rather fearsome image of a potential opponent's bearing spikes at the end of his or her knuckles tends to make a would-be attacker think twice (an aspect that renders the B[CK] a useful defensive item for relatively weak or vulnerable potential rape and/or robbery victims who may have to traverse dangerous areas").) However, having determined that the statute does not make any distinction for weapons possessed for defensive use versus offensive use, and having determined that the statute is very clear in that regard and is not vague as applied to this key chain/weapon, it is simply not the proper role of the court, in the context of a vagueness challenge, to re-write the statute to permit such defensive possessions of such items, as plaintiff wishes; rather, that is the exclusive province of the duly-elected, legislative branch. *See, e.g.*, *United States v. Arnold*, 126 F.3d 82, 86 (2d Cir. 1997) ("Notwithstanding that such a result was unintended, the Court declines any invitation to redraft the statute – that is a task better left to the legislature."); *see also Thomas v. Goetzmann*, 337 F.3d 489, 493 (5th Cir. 2003) ("[W]e reiterate that the courts are not in the business of amending legislation. If the plain language . . . produces the legislatively unintended result claimed by the government, the government's complaint should be addressed to Congress, not the courts, for such revision as Congress may deem warranted, if any."); *Leila G. Newhall Unitrust v. Comm'r of I.R.S.*, 105 F.3d 482, 487 (9th Cir. 1997) ("In any event, if the statute has unintended consequences, it is for Congress, not the courts, to take appropriate measures to avert them."). If the New York State Legislature wants to permit these types of items for defensive purposes (as plaintiff suggests), the statute could easily be amended to reflect such an intent.

In sum, the Court concludes that summary judgment is warranted in favor of the County defendants because Section 265.01(1) is not constitutionally vague as applied to this case.[12]

---

[12] The County defendants also argue that the claims against defendants Rice and Kalaydijian must be dismissed because they are protected by absolute immunity. (County Defs.' Br. in Support of Cross Motion at 6-7.) However, the only cause of action against the County Defendants is for a declaration that Section 265.01 is void for vagueness as applied to the Black Cat Keychain. (Amen. Compl. at ¶¶49-60.) Since this Court has already determined that the statute is not vague, the Court need not address whether Rice and Kalaydijian are protected by absolute immunity.

IV. CONCLUSION

For the reasons set forth above, the plaintiff and Bud-K's motions for partial summary judgment are denied and the County defendants' motion for summary judgment is granted. Accordingly, all claims against the County defendants are dismissed.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 28, 2012
Central Islip, New York

\* \* \*

Plaintiff is represented by James M. Maloney, Law Offices of James M. Maloney, 33 Bayview Avenue, Port Washington, NY 11050. Defendant Bud-K Worldwide, Inc. is represented by Daniel C. Lawson, Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C., US Steel Tower, Suite 4850, 600 Grant Street, Pittsburgh, PA 15219. Defendants Kathleen M. Rice and Lauren J. Kalaydijian are represented by Liora M. Ben-Sorek, Nassau County, Attorney's Office, One West Street, Mineola, NY 11501.